# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ELIZABETH WILSON,

    Plaintiff,

vs.                                              No. CIV 98-0405 JC/KBM

HEALTHCARE CORPORATION OF SOUTHERN
NEW MEXICO, d/b/a COLUMBIA MEDICAL CENTER,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Defendant's Motion for Summary Judgment, filed June 3, 1999 *(Doc. 19)*. Defendant asserts that summary judgment is warranted on Plaintiff's Americans with Disabilities Act (ADA) and breach of contract claims thereby requiring dismissal of this entire cause of action with prejudice.

**A.**     **Background**

Plaintiff began work as a registered nurse (RN) at the Hobbs Community Hospital, Inc., d/b/a Lea Regional Medical Center (Medical Center) in 1983.[1] While working at the Medical Center, Plaintiff became addicted to Demerol which she took from the Medical Center's drug supplies.[2] In 1991, Plaintiff attempted to curb her use of Demerol by voluntarily transferring to the mental health

---

[1] Defendant believes that Plaintiff named the wrong defendant in this suit. According to Defendant, the correct defendant is Hobbs Community Hospital, Inc., d/b/a Lea Regional Medical Center.

[2] Plaintiff has a mental diagnosis of chronic major depression which apparently led to her use of and addiction to Demerol.

unit where there was typically no access to narcotics. Even so, the Medical Center "floated" Plaintiff to other units of the Medical Center where she continued to obtain Demerol.

In February 1997, the Medical Center discovered Plaintiff's illegal use of Demerol. Plaintiff admitted at that time that she was taking and using Demerol from the Medical Center's drug supplies. The Medical Center informed Plaintiff that she could not work in a position which had access to medications. The Medical Center then offered Plaintiff a position as a quality assessment nurse in the risk management department. Although that position did not require Plaintiff to handle medications, the quality assessment nurse position represented about a 50% reduction in pay. Plaintiff began work in that position on March 10, 1997 and worked there three days before being admitted to an eight-day, in-patient drug treatment program in Lubbock, Texas. After being discharged from the in-patient drug treatment program, Plaintiff met with the New Mexico Board of Nursing. Plaintiff executed a four-year contract with the Board of Nursing whereby Plaintiff could retain her nursing license if she did not 1) have access to narcotics, 2) work overtime, 3) work night shifts, 4) engage in agency or home health work, and 5) miss daily Narcotics Anonymous or a similar group's meetings.

Once Plaintiff completed the drug treatment program and met with the Board of Nursing, Plaintiff voluntarily resigned from the quality assessment nurse position because of the low pay. Plaintiff then asked the Medical Center if it would rehire her as an RN provided she did not have access to narcotics as required by the Board of Nursing contract. The Medical Center did not rehire Plaintiff because all of its RN positions require the ability to access narcotics when needed.

The Medical Center has in place guidelines for accommodating employees with disabilities including those recovering from substance abuse problems. The substance abuse policy guideline states that

1. Recovering drug-related substance abusers working in hospital areas will not be permitted to work in areas containing medication dispensing systems until a year of sobriety has been maintained.

2. Every effort will be made to transfer employees to an appropriate working area. Sobriety must be maintained.

Pl.'s Ex. F (attached to Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J., filed June 3, 1999).

Plaintiff contends in her First Amended Complaint that Defendant's actions violated the ADA by constructively discharging her from the RN position and refusing to rehire her as an RN. Plaintiff also contends that Defendant breached an implied employment contract with Plaintiff by not following its own policies with respect to employees recovering from substance abuse. The Medical Center argues in its Motion for Summary Judgment that the Medical Center did not violate the ADA nor did it breach any alleged implied employment contract with Plaintiff.

**B.     Summary Judgment Standard**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The Federal Rules of Civil Procedure provide that it is the movant's burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 321-23 (1986). Once the movant has made such a showing, the adverse party "may not rest upon the mere allegations or denials of [their] pleading[s], [they] must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). In reviewing a motion for summary judgment, "[t]he evidence must

be viewed in the light most favorable to the nonmoving party, *Frandsen v. Westinghouse Corp.*, 46 F.3d 975, 977 (10th Cir. 1995), even when it is produced by the moving party." *Buchanan v. Sherrill*, 51 F.3d 227, 228 (10th Cir. 1995). "Summary judgment is only appropriate if 'there is [not] sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Biester v. Midwest Health Servs., Inc.*, 77 F.3d 1264, 1266 (10th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "Thus, to defeat a summary judgment motion, the non-movant 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U. S. 574, 585-86 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

**C.     The ADA Claim**

Defendant argues that it did not violate the ADA, so the ADA claim is subject to summary judgment. The ADA provides in relevant part: "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Where there is no direct evidence of discrimination based on a disability, the case is analyzed under the *McDonnell Douglas* burden-shifting scheme. *Den Hartog v. Wasatch Academy*, 129 F.3d 1076, 1085 (10th Cir. 1997). That scheme entails that Plaintiff must first make a *prima facie* case which establishes that she is disabled, is otherwise qualified and can perform the essential functions of her job with or without reasonable accommodation, and the employment termination occurred under

circumstances which give rise to an inference that the termination was based on the disability. *See, e.g., MacDonald v. Delta Air Lines, Inc.*, 94 F.3d 1437, 1443 (10th Cir. 1996) (citations omitted).

    **1.    Is Plaintiff "disabled" within the meaning of the ADA?**

Following the burden-shifting scheme, the first question to be addressed under the ADA is whether the Plaintiff is "disabled." The ADA defines the term "disability" as any of the following: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Working is the major life activity at issue here. *See* 29 C.F.R. § 1630.2(i). With respect to the major life activity of working, an employee is "substantially limited" if he or she is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes . . . ." 29 C.F.R. § 1630.2(j)(3)(i). In *McGuinness v. University of NM Sch. of Med.*, 170 F.3d 974, 978 (10th Cir.1998), *cert. denied*, 119 S. Ct. 1357 (1999), the Tenth Circuit recently stated:

> In employment cases, we have held that an individual does not suffer a disability under the ADA if his disability does not prevent him from performing 'a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities.' *Siemon v. AT&T Corp.*, 117 F.3d 1173, 1176 (10th Cir. 1997) (quoting 29 C.F.R. § 1630.2(j)(3)(i)). For example, in *MacDonald v. Delta Airlines, Inc.*, 94 F.3d 1437 (10th Cir. 1996), we held that an airline mechanic whose impaired vision prevented him from taxiing aircraft was not disabled under the ADA because he was only disqualified from 'a single, particular job.' *Id*. at 1445; *see also Bolton v. Scrivner, Inc.*, 36 F.3d 939, 942 (10th Cir. 1994) (stating that working 'does not necessarily mean working at the job of one's choice.'). By analogy, Mr. McGuinness must demonstrate that his anxiety impedes his performance in a wide variety of disciplines, not just chemistry and physics. This he has failed to do.

Moreover, "the inability to pursue one career, such as medicine, does not constitute a severe impact on an individual's life." *Id*. at 979 (citing *Welsh v. City of Tulsa*, *Okla.*, 977 F.2d 1415, 1419

(10th Cir. 1992)). In sum, "'[a]n impairment must substantially limit employment in general, not merely the particular job that the plaintiff may wish to hold.'" *Sutton v. United Air Lines, Inc.*, 130 F.3d 893, 904 (10th Cir. 1997), *cert. denied*, 119 S. Ct. 790 (1999) (quoting *Hileman v. City of Dallas, Tex.*, 115 F.3d 352, 354 (5th Cir. 1997)).

In this case, it is undisputed that Plaintiff cannot engage in employment where she has access to Demerol or other narcotic drugs, works overtime, works night shifts, and is employed at a home health agency. These restrictions do not keep her from working as a quality assessment nurse, albeit at a lower pay. These restrictions likewise would not keep Plaintiff from working at other medical facilities which do not require that the RN's float to areas where they have access to Demerol or other narcotic drugs. Plaintiff has presented no evidence that she cannot pursue non-RN jobs or even non-medical jobs because of her Demerol addiction. In fact, during the time that Plaintiff abused Demerol, she was able to work. *See Jones v. HCA Health Servs. of Kan., Inc.*, 1998 WL 159505 at *12 (D. Kan. 1998) (ability to work as a nurse despite abuse of Demerol was evidence that drug addiction did not substantially limit a major life activity). I find that Plaintiff has not shown that her drug addiction impedes her ability to perform in a wide variety of employment areas. Plaintiff, therefore, failed to meet the first prong of her *prima facie* case, i.e., that she is disabled within the meaning of the ADA.

2. **Is Plaintiff otherwise qualified and able to perform the essential functions of her job with or without reasonable accommodation?**

An individual is not otherwise qualified under the second prong of Plaintiff's *prima facie* case if he or she "is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use." 42 U.S.C. § 12114(a). The ADA, however, has a "safe harbor" provision for

recovering addicts. 42 U.S.C. § 12114(b). The question which arises in this case is whether Plaintiff was "currently" using Demerol when the Medical Center decided not to allow her to continue her work as an RN. A "current" illegal drug user is one who has used drugs illegally "in the weeks and months prior to discharge." *Shafer v. Preston Mem'l Hosp. Corp.*, 107 F.3d 274, 280 (4th Cir. 1997), *quoted in Nielsen v. Moroni Feed Co.*, 162 F.3d 604, 610 (10th Cir. 1998). It is undisputed that Plaintiff was using Demerol just prior to her being confronted with the missing Demerol in February 1997 and being reassigned to the position of quality assessment nurse in March 1997. Only several weeks after that reassignment to quality assessment nurse, the Medical Center turned down Plaintiff's request to be rehired as an RN. Under these circumstances, I find that Plaintiff used Demerol "in the weeks and months prior to discharge." Accordingly, Plaintiff is not otherwise qualified and so fails to meet the second prong of her *prima facie* case. Because Plaintiff has failed to meet the first two prongs of her *prima facie* case, there is no need to discuss the third prong or any of the other arguments put forth by Defendant with respect to the ADA claim. As a matter of law, summary judgment should be granted as to the ADA claim.

**D.**     **The Breach of Contract Claim**

Defendant also argues that there was no implied employment contract between the Medical Center and Plaintiff to keep Plaintiff in her RN position subject to the Nursing Board's restrictions, and if there was such an implied employment contract, the Medical Center argues that it did not breach the contract. In New Mexico, it is the "general rule that employment contracts supported by no consideration other than the performance of duties and payment of salary are employment agreements for an indefinite period and are terminable at will by either the employer or the employee,

absent an express agreement specifying the terms of such employment." *Lopez v. Kline*, 124 N.M. 539, 541, 953 P.2d 304, 306 (Ct. App. 1997), *cert. denied*, 124 N.M. 418, 952 P.2d 19 (1998) (citations omitted). One exception to this general rule occurs "where the facts disclose the existence of an implied employment contract provision that limits the employer's authority to discharge." *Id*. (citations omitted). To determine whether an at will employment relationship has been modified one examines the totality of the circumstances of the employment relationship. *Id*. (citations omitted). A personnel manual or handbook can be used to modify an at will employment relationship if the manual or handbook is sufficiently specific to demonstrate an intent to form a contract. *Newberry v. Allied Stores, Inc.*, 108 N.M. 424, 426-27, 773 P.2d 1231, 1233-34 (1989). "Under New Mexico law, a personnel manual gives rise to an implied contract if it controlled the employer-employee relationship and an employee could reasonably expect his employer to conform to the procedures it outlined." *Id*. at 427, 773 P.2d at 1234. "The reasonableness of expectations is measured by just how definite, specific, or explicit has been the representation or conduct relied upon." *Hartbarger v. Frank Paxton Co.*, 115 N.M. 665, 672, 857 P.2d 776, 783 (1993), *cert. denied*, 510 U.S. 1118 (1994).

In this instance, no evidence has been presented that the Medical Center's policy regarding recovering substance abusers is not controlling of the employee-employer relationship. For purposes of this discussion, the Court will assume that this policy is controlling. The Medical Center's policy clearly states that those recovering substance abusers will not work in areas with a medication dispensing system until a year of sobriety has been maintained. The Medical Center's policy, however, states that only "every effort will be made to transfer employees to an appropriate working area." The language of the policy does not explicitly or definitely limit the Medical Center's authority

to discharge a recovering substance abuser if it cannot transfer that employee to an appropriate working area. Without that explicit or definite limitation of the Medical Center's authority to discharge recovering substance abusers, I cannot find that the Medical Center's policy constitutes an implied contract. Accordingly, the breach of contract claim is subject to summary judgment.

Even assuming that an implied contract existed, I find that the Medical Center did not breach the contract. Specifically, the Medical Center transferred Plaintiff to the position of quality assessment nurse. It is undisputed that the pay of the quality assessment nurse was lower than that of Plaintiff's prior RN position. The Medical Center, however, could not transfer Plaintiff to an RN position because the RN's float to areas with access to medication dispensing systems. The Medical Center made, therefore, "every effort" to transfer Plaintiff to an area of the hospital that did not contain a medication dispensing system. Since the Medical Center did not breach any alleged implied contract, Plaintiff's breach of contract claim is subject to summary judgment for that reason as well. In sum, Defendant's Motion for Summary Judgment should be granted and Plaintiff's cause of action dismissed with prejudice.

Wherefore,

IT IS ORDERED that Defendant's Motion for Summary Judgment *(Doc. 19)* is **granted**, and this cause of action **dismissed** with prejudice.

DATED this 28th day of June, 1999.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**

Counsel for Plaintiff:	Hannah B. Best
	Gail A. Heglund
	Albuquerque, New Mexico

Counsel for Defendant:	Barbara A. Reddy
	Steven L. Bell
	Atwood, Malone, Turner & Sabin, P.A.
	Roswell, New Mexico